IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | 20 CR 443 |
| v. | ) | Honorable Robert W. Gettleman |
| | ) | |
| JOHN SEIWERT, | ) | |
|     Defendant. | ) | |

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

NOW COMES, defendant, JOHN SEIWERT, by and through his attorney, QUINN A. MICHAELIS, respectfully requests that this Honorable Court suppress from evidence his involuntary statements, pursuant to the Fifth Amendment to Constitution, and *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny. In support of this motion, Mr. Seiwert states as follows:

### STATEMENT OF FACTS

On July 30, 2020, federal agents executed a search warrant at 8830 Golfview Drive, Orland Park, Illinois. Mr. Seiwert was present in the home when investigators entered. As the investigators entered, according to reports generated about the execution of the search warrant, Mr. Seiwert was "irate, yelling, and flailing his arms." Mr. Seiwert was placed in handcuffs while the investigators conducted a sweep of the home, looking for additional people inside.

At some point, Mr. Seiwert was escorted to the front lawn of the home. While investigators continued to search the home, Mr. Seiwert was asked to accompany agents to the Orland Hills police station to answer questions. According to reports,

1

Mr. Seiwert was repeatedly told he was not under arrest. Before leaving the home, Mr. Seiwert asked for his phone, which was then taken into evidence by investigators and not given to Mr. Seiwert. Besides Mr. Seiwert's dog, it is unclear from reports whether Mr. Seiwert had any other possessions with him, including his wallet or his house keys.

While driving to the Orland Hills police department, Mr. Seiwert and the investigators engaged in conversation. Mr. Seiwert's speech was slurred and garbled while he spoke with them.

When Mr. Seiwert was brought into an interrogation room he slumped into his chair as the agents began speaking to him. Although Mr. Seiwert stated "I'm listening to you, I'm not falling asleep," his head rests on his folded arms and he remains still as the agent begins to discuss the *Miranda* warnings with him. As the agent reads the specific warnings, Mr. Seiwert continues to keep his head down and does not follow along on the sheet provided to him. Mr. Seiwert only lifts his head when the agent instructs him to sign the waiver form. Mr. Siewert is then asked a number of questions about his drug use, and he states that he last used crack cocaine a few hours prior. The agent then asks Mr. Seiwert whether he is "ok" and Mr. Seiwert shrugs his shoulders before responding "yeah, I guess."

## ARGUMENT

Despite repeated insistence that Mr. Seiwert was free to go, the ATF agents placed him in an interrogation room with the door closed and began their questioning of him by reading to him the *Miranda* warnings. It is unclear from any

2

of the reports tendered thus far, and from the recorded interview, whether Mr. Seiwert had his keys or a wallet with him in the interrogation room. He had been driven to the station by a police officer, so he did not have a vehicle with which to drive himself home. The officer had taken his phone into evidence while searching Mr. Seiwert's house, so he no longer had a way to call for ride. Once in the interrogation room, the agents presented him with a waiver to sign, and he signed that form. But providing *Miranda* warnings and a signature waiving his rights is the beginning, rather than the end of the constitutional inquiry. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010)("the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused…knowingly and voluntarily waived [Miranda] rights when making the statement.").

Two inquiries must be made when a defendant challenges the admission of statements made during a custodial interrogation: "whether he received and validly waived his *Miranda* rights, and whether his statements themselves were voluntary." *United States v. Outland*, 993 F.3d 1017 (7th Cir. 2021). To determine the admissibility of the waiver, the "waiver must be 'voluntary' in the sense that it was the product of a free and deliberate choice, rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The defendant must have "full awareness" of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Standing alone, the fact "that a *Miranda* warning was given and the accused made an uncoerced statement [to

3

police] is insufficient to demonstrate a valid waiver of *Miranda* rights…the prosecution must make the additional showing that the accused understood these rights." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010).

The second inquiry the Court must conduct involves "whether, under the totality of the circumstances, the defendant's statement to authorities were voluntary." *Outland* 993 F.3d at 1021. Confessions obtained through "coercive means that overcame the defendant's free will" will be deemed involuntary. *Colorado v. Connelly*, 479 U.S. 157, 164-65 (1986).

The Seventh Circuit has recognized that intoxication is relevant to the inquiry of voluntariness. Here, not only did the agents ask when Mr. Seiwert had last used crack cocaine ("a few hours ago"), they specifically asked him whether he was "ok right now?" Mr. Seiwert shrugged his shoulders and in the video of the interview, his response is inaudible. According to the agent's report, Mr. Seiwert allegedly stated "yeah, I guess." "When interrogating officers should reasonably have known that a suspect was under the influence of drugs or alcohol, 'a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession." *United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009) (quoting *United States v. Haddon*, 927 F.2d 942. 946 (7th Cir. 1991). Mr. Seiwert frequently put his head in his arms and appeared to be nodding off during the questioning. He claimed that he had been up all night cleaning, that he had used crack cocaine that day, and at various points during the interview, his response to questions were inaudible and his answers mumbled. The agents asked him to sign two different

4

forms and Mr. Seiwert laid his head on the table while the agent read both forms to him, only lifting his head when the agent told him to sign the forms.  As soon as the forms were signed, Mr. Seiwert laid his head back on the table.  The agents had sufficient awareness of, and concern about Mr. Seiwert's possible impairment, and even asked him if he was "ok."  Despite his shoulder shrug, a non-committal answer of being "ok", mumbled answers, and posture, the agents pressed on.

Secondly, both the interviewing agents and the officer who drove Mr. Seiwert to the police station repeatedly mention Mr. Seiwert's father, a retired corrections officer who had been killed in a car crash just a month previous.  During the car ride to the Orland Park police station, Mr. Seiwert and the officer driving the car talk about knowing the chief of police at the Orland Park police department.  Mr. Seiwert then asks the officers to leave behind whatever drugs they discovered in the house.  The officer later expresses his condolences over Mr. Seiwert's father's death and the difficulties that his death must have brought.  The statement appears to upset Mr. Seiwert who becomes less talkative and begins to wipe his face against his shirt sleeve.  Mr. Seiwert then asks what kind of drugs have been found in the house, and the other officer in the car states that they found crack in the house but reminds Mr. Seiwert that he's not in handcuffs.  The entire conversation suggests that the officers are giving Mr. Seiwert special consideration because of his father's position in law enforcement.

During the recorded interview, Mr. Seiwert asks why the agents want to know information about his drug use, and the agents indicate that they wanted to

5

get him some help, stating specifically, "your dad's part of the blue family," and then telling Mr. Seiwert that his dad would appreciate the agents directing him towards treatment.

The repeated reference to Mr. Seiwert's father, that he was part of the "blue family," and that Mr. Seiwert was not under arrest despite finding crack cocaine in his house, was suggestive to Mr. Seiwert that he was receiving special treatment by way of his father's position and was deceptive enough to overcome the voluntariness of his confession. A defendant's waiver is knowing and intelligent when he "understands that he can refuse to talk to the people asking him questions or stop the questioning once it begins; that the people asking him questions are not his friends but are police or law enforcement personnel who are trying to show he is guilty of a crime; that he can ask for and get a lawyer who will help him; and that he does not have to pay for that lawyer." *Collins v. Gaetz*, 612 F.3d 574, 588 (7th Cir. 2010). "It is only when the evidence in the case shows that the defendant could not comprehend even the most basic concepts underlying the *Miranda* warnings that the courts have found an unintelligent waiver." *Id.*

Further, the repeated reference to Mr. Seiwert's father amounted to a false promise of leniency because of the elder Seiwert's relationship to law enforcement. "[A] false promise has the unique potential to make a decision to speak irrational and the resulting confession unreliable." *United States v. Villalpondo*, 588 F.3d 1124, 1128 (7th Cir. 2009).

6

The combination of Mr. Seiwert's intoxication and the apparent leniency with which he was being given because of his father's position show that Mr. Seiwert's waiver of his *Miranda* rights was not knowing and voluntary, and his resultant statement to the agents was similarly not knowing and voluntary.

CONCLUSION

The interview of Mr. Seiwert violated his rights. The interviewing agents had reason to know that Mr. Seiwert was both sleep deprived an under the influence of crack cocaine at the time of their interview, but they continued to interview him even after he explicitly told the agents he had used crack cocaine a few hours prior. Further, the agents used the fact that Mr. Seiwert's father was previously a member of law enforcement to suggest that he would be given special treatment or leniency. Under the totality of the circumstances Mr. Seiwert requests that his statement to law enforcement be suppressed. In the alternative Mr. Seiwert requests an evidentiary hearing to determine whether his statements to law enforcement should be suppressed.

Respectfully submitted,

s/Quinn A. Michaelis
_____
Quinn A. Michaelis
Attorney for John Seiwert
73 W. Monroe, Suite 106
Chicago, IL 60603
(312)714-6920

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2021, I electronically filed the above

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

with the Clerk of Court using the CM/ECF system to all listed parties in the case.

Respectfully Submitted on May 27, 2021.

By His Attorney,

s/ Quinn A. Michaelis

Quinn A. Michaelis
Attorney for John Seiwert

73 W. Monroe, Suite 106
Chicago, IL 60603
(312)714-6920